### HOLMES v. KLEIN et al.
### No. 4444.

Court of Civil Appeals of Texas. Amarillo.
June 10, 1935.

Rehearing Denied July 1, 1935.

W. I. Gamewell, of Canyon, for plaintiff in error.

A. A. Lumpkin and H. H. Cooper, both of Amarillo, for defendants in error.

HALL, Chief Justice.

We endeavored to state the substance of the pleadings of the parties upon the first appeal, reported in 59 S.W.(2d) 171. Since the first trial, both parties have amended and filed several supplemental pleadings. We refer to the report for the substance of the original pleadings.

Upon this appeal the pleadings of the parties cover more than 100 pages of the transcript, and we will give only a brief synopsis of them.

In addition to the original allegations made by Holmes in his pleading filed at the first trial, he alleges in his third amended petition, upon which this trial was had, that the $800 borrowed from the bank and credited upon one of said $1,161.25 notes was borrowed by Klein with Holmes as his surety, executing to the First National Bank of Canyon a note for $850, of which sum Klein paid Holmes $800 and retained the $50 himself; that said note was renewed several times, and was finally paid by Holmes on January 20, 1931, at which time the bank assigned and delivered the note to Holmes. In the third amended petition Holmes seeks to recover upon that note, principal, interest, and 10 per cent. attorney's fees, and also seeks to recover from Klein the principal, interest, and attorney's fees due upon another note in the principal sum of $180.10, dated October 8, 1930.

In the third amended petition he seeks first to recover in the capacity of owner the possession of the wheat, and to recover judgment against Klein for the various items of indebtedness evidenced by notes, charges for harvesting expenses, etc. In the alternative he seeks to recover possession as mortgagee entitled to possession of the wheat in the possession of the elevator companies for the purpose of selling the same under the power of sale in his mortgage, and seeks damages arising from the wrongful detention of the wheat on a fluctuating market, such damages limited by the

amount of Holmes' debt against Klein. As a third alternative he seeks to recover judgment against Klein for his debt and to foreclose his chattel mortgage lien upon all the property described therein, and also the landlord's lien upon the wheat for crop expenses paid as a first and superior lien entitled to priority against all defendants. As a fourth alternative he seeks to recover judgment against Klein for all indebtedness alleged to be due him, and as mortgagee or owner to recover of the elevator companies damages for conversion of the wheat deposited with them, and prays that, if the conversion by the elevator companies was willful, he have the highest market value obtainable for such wheat at the places of conversion since it was converted. He alleges that the conversion was willful. At all events, he seeks to recover a personal judgment against the Panhandle Mutual Hail Association for any storage, handling, or insurance charges which the Great West Mill & Elevator Company might recover against him or might establish as a lien on the wheat deposited with the Great West Mill & Elevator Company. He further alleges that the wheat was raised upon the section of land leased to Klein, and was, after August 4, 1931, for sale by him, of which fact he notified the Great West Mill & Elevator Company.

Since the former trial, the Farmers' Elevator Company filed its first amended answer, alleging that it had purchased the wheat in controversy from Klein which had been deposited with it, and tendered the proceeds thereof, amounting to $200, in the registry of the court, asking that said amount be paid to the party or parties entitled thereto.

Great West Mill & Elevator Company answered, alleging that it had stored in its elevator 164,350 pounds of wheat in the name of Holmes, who, as landlord, was the owner of a one-third interest therein, for which he had been paid; that it had not been able to pay the remaining two-thirds because of the controversy between the parties and the conflicting claims and liens thereon. It set up its claim for storage and charges for receiving, turning, and handling the wheat, and alleged it was willing to return the wheat in kind upon the payment of its charges, or pay the market price, less the charges due against it.

The Panhandle Mutual Hail Association alleged that the sale of the farm machinery by Holmes, made under the power contained in his chattel mortgage from Klein to Holmes, was void, for the reason that the property was sold for charges not covered by the mortgage to the extent of $361.53; that it was further invalid upon the ground that two of the three notices posted were posted in the town of Canyon; that said association had a valid, subsisting chattel mortgage upon all the wheat to secure a note due it made by Klein in the sum of $275. It prayed for judgment for the amount of its debt and foreclosure of its lien, and further that, if Holmes' lien be held to be prior and superior to the lien of the hail association, he be required to marshal his securities and sell the farm machinery first, leaving the wheat to be applied to its indebtedness. It also alleged that Holmes had converted the farm machinery belonging to Klein, which was reasonably worth $2,000, and had converted a certain amount of the wheat in controversy, all of which was sufficient to satisfy the indebtedness due from Klein to Holmes, for the reason at the time of such conversion Klein did not owe Holmes more than $1,600.

Holmes does not allege that he sold the farm implements to Klein to enable him to make his crop and claims no landlord's lien on them.

The case was submitted to the jury upon special issues, in response to which they found as follows:

Special issue No. 1: (a) Klein produced and harvested 4,626 bushels of wheat in 1931 on Holmes' section of land; (b) that he deposited 1,046 bushels in the Farmers' Elevator Company's elevator at Umbarger, 400 bushels in the elevator at Bushland, 1,000 bushels in the grainery on the farm, and 1,880 bushels piled on the ground at the farm.

Special issue No. 2: (a) 85 acres of wheat matured on the land in 1931 which the defendant Klein did not harvest; (b) A. E. Shaw finished harvesting the wheat; (c) harvesting 342 bushels; (d) that the services of Shaw in harvesting said wheat were not necessary; (e) that the charges made therefor were not reasonable; (f) the charges made by Shaw for hauling one-third of the wheat to the elevator at Umbarger were necessary and reasonable; (g) A. Holmes paid Shaw $239.41 for harvesting all of said wheat and hauling one-third thereof.

Special issue No. 3: (a) That the Great West Mill & Elevator Company did not

agree that it would not charge storage for the 1,826 bushels of wheat deposited in its elevator at Umbarger after fifteen days from the date the last load of it was so deposited; (b) $356.07 is reasonably due the Great West Mill & Elevator Company for storage (including insurance and handling) of the wheat deposited in its elevator; (c) that said wheat has been reduced in volume by shrinkage while in the elevator, (d) to the amount of 45½ bushels; (e) that it was necessary for said wheat while stored to be handled and turned; (f) and it was so handled and turned; (g) the elevator is entitled to $45.50 for such services.

Special issue No. 4: (a) The reasonable market value on August 4, 1931, in Randall county of the wheat deposited by Klein in the grainery on the premises was $186; (b) the reasonable market value of the wheat placed by Klein in a pile on the premises was $368.28; (c) the reasonable market value at that time of the 1,826 bushels of wheat stored in the elevator of the Great West Mill & Elevator Company at Umbarger was $383.46; (d) the reasonable market value of the wheat in the elevator at Bushland was $84; (e) that the reasonable market value of the wheat which plaintiff Holmes used in 1931 in seeding his land was $108.25.

Special issue No. 5: That the reasonable market value of the tractor and other farm machinery described in the chattel mortgage, dated May 9, 1930, was $1,500.

Special issue No. 6: (a) That it was not the intention and agreement of Holmes and Klein, at the time they made the note for $850, to the National Bank of Canyon, that it should be secured by the chattel mortgage which Klein made to Holmes on May 9, 1930; (b) the First National Bank of Canyon made the loan of $850 to Klein with Holmes as surety.

Special issue No. 7: It was not the intention and agreement of Holmes and Klein, at the time the latter executed the $180.10 note on October 8, 1930, that it should be secured by the chattel mortgage dated May 9, 1930.

In response to special issues Nos. 1 and 2, submitted at the request of Holmes, the jury found that Klein paid Holmes $800 on his indebtedness July 21, 1930, and also paid Holmes $150 May 20, 1930.

Based upon the verdict, the court rendered judgment in favor of Holmes against Klein for $1,045.73, with interest at the rate of 10 per cent. per annum from the date of the judgment. No lien was foreclosed in favor of Holmes upon any property. The judgment further decrees that the Great West Mill & Elevator Company recover $401.57 for storage and handling charges for the wheat deposited with it, together with a foreclosure of its warehousemen's lien thereon. The judgment recites that the Great West Mill & Elevator Company may purchase the wheat from Klein and pay the market value therefor, but, in the event it does not, an order of sale may issue. Judgment was rendered against the Panhandle Mutual Hail Association against Klein for the foreclosure of its chattel mortgage lien, inferior, however, to the warehousemen's lien of the Great West Mill & Elevator Company. The judgment further ordered the clerk of the court to pay to the Panhandle Mutual Hail Association, upon its judgment, the $200 which had been deposited by the elevator company in the registry of the court.

The defendant Klein entered his appearance, but filed no formal answer.

The Brumley Chevrolet Company, International Harvester Company, J. I. Case Company, and the Walker Implement Company filed disclaimers.

The appellant Holmes presents his case here by a brief consisting of forty-five assignments of error and seven propositions under assignment No. 4. We will discuss only such contentions as we deem necessary in properly disposing of the appeal.

■ According to the findings of the jury, the farm implements and machinery which Holmes had converted by taking it into possession under his void trustee's sale, and by using it, he has collected the value thereof, which the jury found to be $1,500. He is also chargeable with $186, the value of the wheat left in the grainery on the leased premises by Klein, together with $368.28, the value of the grain which Klein left piled on the ground. The jury found further that Holmes had received the proceeds of the 400 bushels of wheat deposited in the Bushland Elevator Company of the value of $84, and had used wheat in replanting his land to the value of $108.25. The total of these sums is $2,247.53. In response to special issues numbered 1 and 2, the jury found, as stated, that Klein had paid Holmes $950 in two payments, the first being $800 paid July 21, 1930, out of the $850 which Klein borrowed from the bank with Holmes as his surety, and had also made a payment of $150 May 20, 1930,

both of which sums Holmes agreed to credit upon the two notes for $1,161.25, which Klein had executed to Holmes. According to these figures, Holmes has received $3,197.53. The findings of the jury are amply supported by the testimony, and, according to the figures given, Holmes has received $875 over and above the amount of the two notes, and, even if he should be allowed to collect for the money paid Shaw for services in harvesting the 342 bushels of wheat and hauling one-third of it, he has still received more than the amount of his indebtedness. The jury found that the services of Shaw in harvesting certain wheat that Klein did not harvest were unnecessary, presumably for the reason that the yield was so light the expense of harvesting and threshing amounted to more than the value of the wheat harvested, and, while the jury in this connection found that Shaw's charges were not reasonable, there is no finding as to what amount would have been reasonable. The burden was upon the plaintiff to show what the reasonable value of such services was.

The court rendered judgment in favor of Great West Mill & Elevator Company for $401.57, and it appears from the record that $45.50 of this amount is a double recovery, in this: The jury found that the said Mill & Elevator Company was entitled to $356.07 "for storage (including insurance and handling)," and under the same issue found that the elevator was entitled to $45.50 for handling and turning the wheat. It follows that the judgment in favor of the Great West Mill & Elevator Company should be reduced to the extent of $45.50 and affirmed as to the remainder.

The rule is that, where two mortgages are of equal dignity covering the same property, in favor of different mortgagees, the senior mortgagee is liable to the junior mortgagee for conversion of the property to the extent of its market or intrinsic value at the time of the conversion. Note, 43 A. L. R. 388, 393.

The proof was sufficient to entitle the Panhandle Mutual Hail Association to recover the attorney's fees upon its note.

If, as shown by the verdict, Holmes had been fully paid before this suit was instituted, he was not entitled to recover attorney's fees.

It is unnecessary to consider the other questions presented, even though it be admitted that the court erred in some of its rulings. If Holmes has received his money, he is entitled to nothing further out of the proceeds of the wheat.

Because the case has been properly disposed of, the judgment is affirmed.